# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICHOLAS LUONGO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DESKTOP METAL, INC., RIC FULOP, JAMES HALEY, and ALI EL-SIBLANI,<br><br>Defendants, | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Nicholas Luongo ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Desktop Metal, Inc. ("Desktop Metal" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Desktop Metal; and (c) review of other publicly available information concerning Desktop Metal.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Desktop Metal securities between March 15, 2021 and November 15, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Desktop Metal purports to offer additive manufacturing technologies focused on the production of end use parts. Its platforms include: Production System, a manufacturing platform using the Company's proprietary Single Pass Jetting technology enabling production quantities of up to millions of parts per year; Shop System, an affordable turnkey binding jetting platform to bring metal 3D printing to machine and job shops; Studio System, an office-friendly metal 3D printing system; and Fiber, a desktop 3D printer using the Company's proprietary Micro Automated Fiber Placement.

3.      On February 16, 2021, the Company acquired EnvisionTEC, Inc. and certain of its affiliates (collectively, "EnvisionTEC"), a provider of volume production photopolymer 3D printing solutions for end use parts.

4.      On November 8, 2021, after the market closed, Desktop Metal disclosed that it was conducting an internal investigation into certain matters, including "manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility." The Company also stated that the Chief Executive Officer of EnvisionTec US LLC had resigned.

5.      On this news, the Company's stock fell $0.39, or 4%, to close at $8.81 per share on November 9, 2021.

6.      Then, on November 15, 2021, after the market closed, the Company stated that it would notify the U.S. Food and Drug Administration ("FDA") of "compliance issues with certain shipments of EnvisionTEC's Flexcera dental resins and its PCA4000 curing box."

7.      On this news, the Company's stock fell $1.19, or 15%, to close at $6.83 per share on November 16, 2021, on unusually heavy trading volume.

8.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there were deficiencies in EnvisionTEC's manufacturing and product compliance practices and procedures; (2) that the foregoing deficiencies presented a material risk to the commercialization of EnvisionTEC's products; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff Nicholas Luongo, as set forth in the accompanying certification, incorporated by reference herein, purchased Desktop Metal securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Desktop Metal is incorporated under the laws of Delaware with its principal executive offices located in Burlington, Massachusetts. Desktop Metal's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "DM."

16.     Defendant Ric Fulop ("Fulop") was the Company's Chief Executive Officer ("CEO") at all relevant times.

17.     Defendant James Haley ("Haley") was the Company's Chief Financial Officer ("CFO") at all relevant times.

18.     Defendant Ali El-Siblani ("El-Siblani") was a director of the Company from February 2021 to November 2021. He was CEO of EnivisionTec US LLC from 2002 to November 2021.

19.     Defendants Fulop, Haley, El-Siblani (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Desktop Metal purports to offer additive manufacturing technologies focused on the production of end use parts. Its platforms include: Production System, a manufacturing platform using the Company's proprietary Single Pass Jetting technology enabling production quantities of up to millions of parts per year; Shop System, an affordable turnkey binding jetting

platform to bring metal 3D printing to machine and job shops; Studio System, an office-friendly metal 3D printing system; and Fiber, a desktop 3D printer using the Company's proprietary Micro Automated Fiber Placement.

21.     On February 16, 2021, the Company acquired EnvisionTEC, Inc. and certain of its affiliates (collectively, "EnvisionTEC"), a provider of volume production photopolymer 3D printing solutions for end use parts.

**Materially False and Misleading**

**Statements Issued During the Class Period**

22.     The Class Period begins on March 15, 2021. On that day, Desktop Metal filed its annual report on Form 10-K for the period ended December 31, 2020 (the "2020 10-K"). Therein, the Company stated, in relevant part:

> ***We may experience difficulties in integrating the operations of EnvisionTEC into our business and in realizing the expected benefits of the EnvisionTEC acquisition.***
>
> In February 2021, we acquired EnvisionTEC, Inc., or EnvisionTEC, and certain of its affiliates. Additional information about our acquisition of EnvisionTEC, which we refer to as the EnvisionTEC Acquisition, are set forth in "Note 21. Subsequent Events" to our consolidated financial statements in this Annual Report on Form 10-K. The success of the EnvisionTEC Acquisition will depend in part on our ability to realize the anticipated business opportunities from combining the operations of EnvisionTEC with our business in an efficient and effective manner. The integration process could take longer than anticipated and could result in the loss of key employees, the disruption of each company's ongoing businesses, tax costs or inefficiencies, or inconsistencies in standards, controls, information technology systems, procedures and policies, any of which could adversely affect our ability to maintain relationships with customers, employees or other third parties, or our ability to achieve the anticipated benefits of the EnvisionTEC Acquisition, and could harm our financial performance. If we are unable to successfully or timely integrate the operations of EnvisionTEC with our business, we may incur unanticipated liabilities and be unable to realize the revenue growth, synergies and other anticipated benefits resulting from the EnvisionTEC Acquisition, and our business, results of operations and financial condition could be materially and adversely affected.

We have incurred significant costs in connection with the EnvisionTEC Acquisition. The substantial majority of these costs are non-recurring expenses related to the EnvisionTEC Acquisition. These non-recurring costs and expenses are reflected in the unaudited pro forma condensed combined financial information included in this Annual Report on Form 10-K. We may incur additional costs in the integration of EnvisionTEC's business, and may not achieve cost synergies and other benefits sufficient to offset the incremental costs of the EnvisionTEC Acquisition.

23.     On May 17, 2021, Desktop Metal filed its quarterly report on Form 10-Q for the period ended March 31, 2021 (the "1Q21 10-Q"). Therein, the Company stated: "EnvisionTEC's results are included in the Company's consolidated results for the period from February 16, 2021 to March 31, 2021. For this period, EnvisionTEC's net revenues were approximately $5.4 million and net loss was approximately $1.8 million." It also stated:

Total revenue for the three months ended March 31, 2021 and 2020 was $11.3 million and $3.4 million, respectively, an increase of $7.9 million, or 234%. The increase in total revenue was attributable to an increase in revenue from both products and services.

We sold more products during the three months ended March 31, 2021 as compared to three months ended March 31, 2020, leading to an approximately 283% increase in product revenue. This was primarily due to product revenue from EnvisionTEC following the close of this acquisition. Additionally, we shipped more units during the first quarter of 2021 compared to the first quarter of 2020.

24.     Moreover, the 1Q21 10-Q stated that there was a material weakness in the Company's internal control over financial reporting and that its "disclosure controls and procedures are not effective . . . ." Specifically, the report stated the following regarding the Company's controls and procedures:[1]

**Background and Remediation of Material Weakness**

In connection with our evaluation of disclosure controls and procedures covering our consolidated financial statements as of December 31, 2020, we identified material weaknesses in our internal control over financial reporting. We have concluded that material weaknesses exist in our evaluation of disclosure controls and procedures, including internal control over financial reporting, as we do not

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

have the necessary business processes, personnel and related internal controls to operate in a manner to satisfy the accounting and financial reporting requirements of a public company. ***These material weaknesses primarily manifested in the improper segregation of duties relating to the recording of journal entries and the reconciliation of key accounts, as well as the analysis of certain transactions and accounts, and the safeguarding of assets. We identified an additional material weakness related to the design and operating effectiveness of controls over our accounting for significant and complex accounting matters.***

We are focused on designing and implementing effective internal controls measures to improve our evaluation of disclosure controls and procedures, including internal control over financial reporting, and remediate the material weaknesses. In order to remediate these material weaknesses, we have taken and plan to take the following actions:

- the hiring and continued hiring of additional accounting, finance and legal resources with public company experience; and

- implementation of additional review controls and processes requiring timely account reconciliation and analyses of certain transactions and accounts.

These actions and planned actions are subject to ongoing evaluation by management and will require testing and validation of design and operating effectiveness of internal controls over financial reporting over future periods. We are committed to the continuous improvement of our internal control over financial reporting and will continue to review the internal controls over financial reporting.

*       *       *

**Changes in Internal Control Over Financial Reporting**

On February 16, 2021, we completed the acquisition of EnvisionTEC. We are in the process of integrating EnvisionTEC into our system of internal control over financial reporting. Except for the material weaknesses noted above and the acquisition of EnvisionTEC, there were no changes to our internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act) that occurred during the quarter ended March 31, 2021 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

25.     On August 11, 2021, Desktop Metal filed its quarterly report on Form 10-Q for the period ended June 30, 2021 (the "2Q21 10-Q"). Therein, the Company stated: "EnvisionTEC's results are included in the Company's consolidated results for the period from February 16, 2021

to June 30, 2021. For this period, EnvisionTEC's net revenues were approximately $15.7 million and net loss was approximately $4.8 million."

26.     Moreover, the 2Q21 10-Q stated that there was a material weakness in the Company's internal control over financial reporting and that its "disclosure controls and procedures are not effective . . . ." Specifically, the report stated the following regarding the Company's controls and procedures:

**Background and Remediation of Material Weakness**

In connection with our evaluation of disclosure controls and procedures covering our consolidated financial statements as of December 31, 2020, we identified material weaknesses in our internal control over financial reporting. We have concluded that material weaknesses exist in our evaluation of disclosure controls and procedures, including internal control over financial reporting, as we do not have the necessary business processes, personnel and related internal controls to operate in a manner to satisfy the accounting and financial reporting requirements of a public company. ***These material weaknesses primarily manifested in the improper segregation of duties relating to the recording of journal entries and the reconciliation of key accounts, as well as the analysis of certain transactions and accounts, and the safeguarding of assets. We identified an additional material weakness related to the design and operating effectiveness of controls over our accounting for significant and complex accounting matters.***

We are focused on designing and implementing effective internal controls measures to improve our evaluation of disclosure controls and procedures, including internal control over financial reporting, and remediate the material weaknesses. In order to remediate these material weaknesses, we have taken and plan to take the following actions:

- the hiring and continued hiring of additional accounting, finance and legal resources with public company experience; and

- implementation of additional review controls and processes requiring timely account reconciliation and analyses of certain transactions and accounts.

These actions and planned actions are subject to ongoing evaluation by management and will require testing and validation of design and operating effectiveness of internal controls over financial reporting over future periods. We are committed to the continuous improvement of our internal control over financial reporting and will continue to review the internal controls over financial reporting.

27.     The above statements identified in ¶¶ 22-26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that there were deficiencies in EnvisionTEC's manufacturing and product compliance practices and procedures; (2) that the foregoing deficiencies presented a material risk to the commercialization of EnvisionTEC's products; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**<u>Disclosures at the End of the Class Period</u>**

28.     On November 8, 2021, after the market closed, Desktop Metal disclosed that it was conducting an internal investigation into certain matters, including "manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility." In a Form 8-K filed with the SEC, the Company stated:

> On November 4, 2021, the Audit Committee of the Board of Directors of Desktop Metal, Inc. (the "Company") engaged a third party to conduct an independent internal investigation as a result of a whistleblower complaint relating to, among other matters, manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility in Dearborn, Michigan. While the investigation remains on-going, the Company has taken initial actions, including implementing changes in the management of and procedures associated with manufacturing the applicable products. Based on the investigation to date, the Company does not believe the matters involved will have a material impact on the Company, its financial statements or its business.

29.     Also on November 8, 2021, the Company also stated that defendant El-Siblani had resigned as Chief Executive Officer of EnvisionTec US LLC and as a director of Desktop Metal.

30.     On this news, the Company's stock fell $0.39, or 4%, to close at $8.81 per share on November 9, 2021.

31.     Then, on November 15, 2021, after the market closed, the Company stated that it would notify the U.S. Food and Drug Administration ("FDA") of "compliance issues with certain shipments of EnvisionTEC's Flexcera dental resins and its PCA4000 curing box." Specifically, in its Form 10-Q for the period ended September 30, 2021, the Company stated:

> On November 4, 2021, the Audit Committee of the Board of Directors engaged a third party to conduct an independent internal investigation as a result of a whistleblower complaint relating to, among other matters, manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility in Dearborn, Michigan. While the investigation remains on-going, the Company has taken initial actions, including implementing changes in the management of and procedures associated with manufacturing the applicable products. Based on the investigation to date, the Company does not believe the matters involved will have a material impact on the Company, its financial statements or its business.

> On November 5, 2021, Ali El Siblani notified the Company of his intent to resign as a member of the Company's Board of Directors and as an employee of the Company in his role as Chief Executive Officer of EnvisionTec US LLC. The decision of Mr. Siblani was not the result of any disagreement relating to the Company's operations, policies or practices.

> As of November 12, 2021, based on compliance issues with certain shipments of EnvisionTEC's Flexcera dental resins and its PCA4000 curing box, the Company has determined that it will notify the FDA and consult with them on the appropriate voluntary market action with respect to these products. The Company does not expect the costs of any such market action to have a material impact on its financial statements.

32.     On this news, the Company's stock fell $1.19, or 15%, to close at $6.83 per share on November 16, 2021, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Desktop Metal securities between March 15, 2021 and November 15, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate

families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Desktop Metal's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Desktop Metal shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Desktop Metal or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Desktop Metal; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39.     The market for Desktop Metal's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Desktop Metal's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Desktop Metal's securities relying upon the integrity of the market price of the Company's securities and market information relating to Desktop Metal, and have been damaged thereby.

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Desktop Metal's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Desktop Metal's business, operations, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Desktop Metal's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.     During the Class Period, Plaintiff and the Class purchased Desktop Metal's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Desktop Metal, their control over, and/or receipt and/or modification of Desktop Metal's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Desktop Metal, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

45. The market for Desktop Metal's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Desktop Metal's securities traded at artificially inflated prices during the Class Period. On March 19, 2021, the Company's share price closed at a Class Period high of $20.98 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Desktop Metal's securities and market information relating to Desktop Metal, and have been damaged thereby.

46. During the Class Period, the artificial inflation of Desktop Metal's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Desktop Metal's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Desktop Metal and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of

the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for Desktop Metal's securities was an efficient market for the following reasons, among others:

(a)     Desktop Metal shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Desktop Metal filed periodic public reports with the SEC and/or the NYSE;

(c)     Desktop Metal regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Desktop Metal was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for Desktop Metal's securities promptly digested current information regarding Desktop Metal from all publicly available sources and reflected such information in Desktop Metal's share price. Under these circumstances, all purchasers of Desktop Metal's securities during the Class Period suffered similar injury through

their purchase of Desktop Metal's securities at artificially inflated prices and a presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading,

and/or the forward-looking statement was authorized or approved by an executive officer of Desktop Metal who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Desktop Metal's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Desktop Metal's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Desktop Metal's financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Desktop Metal's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Desktop Metal and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the

Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Desktop Metal's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Desktop Metal's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Desktop Metal's securities during the Class Period at artificially high prices and were damaged thereby.

59.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Desktop Metal was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Desktop Metal securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     Individual Defendants acted as controlling persons of Desktop Metal within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which

Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.    As set forth above, Desktop Metal and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: December 21, 2021                    By:   /s/ Daryl Andrews
                                            **ANDREWS DEVALERIO LLP**
                                            Glen DeValerio (BBO #122010)
                                            Daryl Andrews (BBO #658523)
                                            P.O. Box 67101
                                            Chestnut Hill MA 02467
                                            Tel: (617) 999-6473
                                            glen@andrewsdevalerio.com
                                            daryl@andrewsdevalerio.com

                                            **GLANCY PRONGAY & MURRAY LLP**
                                            Robert V. Prongay
                                            Charles H. Linehan
                                            Pavithra Rajesh
                                            1925 Century Park East, Suite 2100
                                            Los Angeles, CA 90067
                                            Telephone: (310) 201-9150
                                            Facsimile: (310) 201-9160

                                            *Attorneys for Plaintiff Nicholas Luongo*

## SWORN CERTIFICATION OF PLAINTIFF
## DESKTOP METAL, INC. (DM) SECURITIES LITIGATION

I, Nicholas Luongo, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.  I did not purchase the Desktop Metal, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Desktop Metal, Inc. securities during the period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

12/15/2021
_____
Date

_____
Nicholas Luongo

**Nicholas Luongo's Transactions in Desktop Metal, Inc.**

**Common Stock**

| Settlement Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 3/30/2021 | Bought | 500 | $15.0000 |
| 4/14/2021 | Bought | 1,000 | $13.5000 |
| 7/14/2021 | Bought | 800 | $10.2000 |

**Options**

| Settlement Date | Transaction Type | Contract Type | Exp / Strike | Quantity | Unit Price |
|---|---|---|---|---|---|
| 3/15/2021 | Sold to Open | Call | Mar. 19, 2021 / $25.00 | -5 | $0.3500 |
| 3/15/2021 | Sold to Open | Call | Mar. 19, 2021 / $25.00 | -5 | $0.3500 |
| 3/15/2021 | Sold to Open | Call | Mar. 19, 2021 / $25.00 | -4 | $0.3500 |
| 3/19/2021 | Expired | Call | Mar. 19, 2021 / $25.00 | 14 | $0.0000 |
| 3/23/2021 | Sold to Open | Call | Apr. 16, 2021 / $25.00 | -1 | $0.4500 |
| 4/8/2021 | Sold to Open | Put | Apr. 16, 2021 / $12.50 | -5 | $0.1000 |
| 4/14/2021 | Bought to Close | Put | Apr. 16, 2021 / $12.50 | 5 | $0.2100 |
| 4/16/2021 | Expired | Call | Apr. 16, 2021 / $25.00 | 1 | $0.0000 |
| 8/17/2021 | Sold to Open | Put | Aug. 20, 2021 / $7.50 | -30 | $0.1500 |
| 8/20/2021 | Expired | Put | Aug. 20, 2021 / $7.50 | 30 | $0.0000 |