UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NICHOLAS LUONGO, Individually and on Behalf of All Others Similarly Situated, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 1:21-cv-12099-IT |
| DESKTOP METAL, INC., et al., | * * | |
| Defendants. | * * | |

* * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| GREGORY HATHAWAY, Individually and on Behalf of All Others Similarly Situated, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 1:22-cv-10059-IT |
| DESKTOP METAL, INC., et al., | * * | |
| Defendants. | * * | |

* * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| OSCAR GUZMAN-MARTINEZ, Individually and on Behalf of All Others Similarly Situated, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 1:22-cv-10173-IT |
| DESKTOP METAL, INC., et al., | * * | |
| Defendants. | * * | |

* * * * * * * * * * * * * * * * * * * * * * *

[caption continues on the following page]

```
* * * * * * * * * * * * * * * * * * * * * * * *
YICHUN XIE, Individually and on Behalf      *
of All Others Similarly Situated,           *
                                            *
        Plaintiff,                          *
                                            *   Civil Action No. 1:22-cv-10297-IT
        v.                                  *
                                            *
DESKTOP METAL, INC., et al.,                *
                                            *
        Defendants.                         *
                                            *
```

MEMORANDUM & ORDER

July 7, 2022

TALWANI, D.J.

Plaintiffs allege that Defendants Desktop Metal, Inc. ("Desktop Metal") and several of its officers violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by making materially false and/or misleading statements and failing to disclose material adverse facts relating to Desktop Metal's acquisition of EnvisionTEC, Inc. ("EnvisionTEC"). On February 4, 2022, the court sua sponte consolidated the first three above-captioned actions pending further order, see Order [Doc. No. 5],[1] and on March 18, 2022, the court sua sponte consolidated a fourth action alleging similar claims but with an earlier-commencing class period than the first three, see Elec. Order [Doc. No. 63].[2] Now pending before the court are competing motions for appointment as lead plaintiff and approval of selection of lead counsel under the Private

---

[1] Luongo v. Desktop Metal, Inc., et al., 1:21-cv-12099; Hathaway v. Desktop Metal, Inc., et al., 1:22-cv-10059; and Guzman-Martinez v. Desktop Metal, Inc., et al., 1:22-cv-10173.

[2] Xie v. Desktop Metal, Inc., et al., 1:22-cv-10297.

2

Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(i), filed by Ajmair Heer, Yichun Xie, and Sophia Zhou ("Movants"). See Mot. [Doc. Nos. 23, 28, 36].[3]

For the reasons set forth below, the court finds the appropriate class period for the consolidated action to be February 17, 2021, through November 15, 2021 (inclusive of both dates). The court has reconsidered consolidation, and vacates consolidation of the fourth action, so that the action alleging losses from an earlier class period may proceed as a separate action. Sophia Zhou will be appointed lead plaintiff in the consolidated action, but the court denies without prejudice her request to appoint Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as lead counsel in the consolidated action.

## I.     Discussion

Under the PSLRA, the court must appoint as lead plaintiff the purported class member or class members that it determines "to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). "If more than one action on behalf of a class asserting substantially the same claim or claims . . . and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not [appoint the lead plaintiff] until after the decision on the motion to consolidate is rendered." Id. § 78u-4(a)(3)(B)(ii).

### A.     *Consolidation and the Class Period*

Under Federal Rule of Civil Procedure 42(a), where actions involve a common question of law or fact, the court may consolidate the actions. The court did so here, on the ground that the allegations in these actions are substantially similar. Although the movants all have endorsed consolidation, they have also pointed to a difference in the actions. Xie contends that the class

---

[3] All other motions for appointment of lead counsel have either been withdrawn or are moot in light of the party's notice or motion of non-opposition to competing motions.

period should be from January 15, 2021, to November 15, 2021 (inclusive of both dates), whereas the other potential lead plaintiffs contend that the class period should be from February 17, 2021, through November 15, 2021 (inclusive of both dates).[4]

For purposes of determining the lead plaintiff, courts typically adopt the most inclusive proposed class period. See e.g., In re Gentiva Sec. Litig., 281 F.R.D. 108, 114 (E.D.N.Y. 2012). The other potential lead plaintiffs urge the court not to use Xie's proposed class period, however, and instead reject claims based on Desktop Metal's alleged material omissions in January 2021.[5]

"'There is a risk . . . to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest.'" Gelt Trading, Ltd. v. Co-Diagnostics, Inc., 2021 WL 913934, at *3 (D. Utah Mar. 10, 2021) (quoting In re BP, PLC Sec. Litig., 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010). "As a result, courts have developed two different standards for deciding whether to accept a shorter proposed class period at the lead plaintiff selection stage of the litigation. Some courts have ruled that the most inclusive class period should not be rejected unless the factual allegations supporting the longest class period are 'obviously frivolous.'" Id. (citation omitted); see also Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp., 256 F.R.D. 620, 625 (E.D. Wis. 2009) (finding appropriate to "review the complaint and briefs to make sure that the allegations supporting the longer class period are not obviously frivolous"). "Other courts have

---

[4] The complaint in Hathaway v. Desktop Metal, Inc., et al., 1:22-cv-10059, alleged a class period commencing on March 15, 2021 (rather than February 17, 2021). However, none of the potential lead plaintiffs advocate for a class period starting that late.

[5] Using the earliest date would result in a determination that Xie has the greatest financial interest, where Xie's claimed losses of over $2,400,000 based on purchases in January 2021 are more than triple those claimed by the other potential lead plaintiffs, but her claimed losses based on a February 17, 2021 start of the class period are a fraction of their claimed losses. See Heer's PSLRA Certification, Ex. B [Doc. No. 27-2]; Xie's Transaction History [Doc. No. 46-2]; Zhou's Loss Calculations [Doc. No. 38-2].

reasoned that the plausibility standard for evaluating a motion to dismiss should be used to determine whether to reject a proposed class period." Gelt Trading, Ltd., 2021 WL 913934, at *3; see also In re Centerline Holding Co. Sec. Litig., 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) ("For purposes of determining the lead plaintiff, I hold that the proper standard is that which is used to evaluate a motion to dismiss: the standard of plausibility").

The court finds neither route satisfactory. Xie's claims based on purchases in January 2021 are not "obviously frivolous" where they are tied to the date of Desktop Metal's January 2021 public announcement of the acquisition of EnvisionTEC. But evaluating the potential class period under this "obviously frivolous" standard leaves open the likelihood that the January 2021 claims will still be challenged by Defendants on a motion to dismiss. The court would therefore still need to consider, before appointing Xie lead plaintiff, if Xie is likely to be "subject to unique defenses that render such plaintiff incapable of adequately representing the class," see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), namely, a motion to dismiss. Nor could the court comfortably use the longer class period but appoint one of the other potential lead plaintiffs to represent that broader class where those movants have already given a disparaging assessment of Xie's motion advocating for the longer class period.

Applying a motion to dismiss standard as part of the appointment of lead plaintiff analysis would also be problematic. If the court found that Xie did state a claim for losses in connection with the January 2021 purchases without hearing from the Defendants, the issue would undoubtedly be reopened once Defendants filed their responsive pleading. If the court rejected Xie's proposed class period, the court's order appointing a lead counsel would have the practical effect of dismissing in the consolidated action Xie's claims that she suffered over $2,400,000 in losses. Such a result would stretch consolidation beyond its purpose, as "merger is never so complete in consolidation as to deprive any party of any substantial rights which he may

5

have possessed had the actions proceeded separately." Hall v. Hall, 138 S.Ct. 1118, 1130 (2018) (quoting 3 J. Moore & J. Friedman, Moore's Federal Practice § 42.01, pp. 3050-3051 (1938)).

The court concludes that the cleaner resolution here is to vacate the consolidation of Xie's action, allowing that action to proceed separately, with new notice to investors, for a proposed class of investors who purchased Desktop Metal stock from January 15, 2021, to February 16, 2021 (inclusive of both dates). The court finds further that the class period relevant for purposes of determining the lead plaintiff in the consolidated action is February 17, 2021, through November 15, 2021 (inclusive of both dates).

B.   *Presumptively Most Adequate Plaintiff*[6]

The court must presume that the most adequate plaintiff is:

the person or group of persons that—

(aa) has either filed the complaint or made a motion [for appointment as lead plaintiff];

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Id. § 78u–4(a)(3)(B)(iii)(I). Once established, that presumption may be rebutted upon proof by another class member that the originally chosen plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. § 78u-4(a)(3)(B)(iii)(II).

While the PSLRA does not provide a methodology for determining which putative class member has the largest financial interest, many courts have considered "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class

---

[6] Heer and Zhou have each satisfied the first PSLRA factor by filing a motion in response to notice under 15 U.S.C. § 78u–4(3)(A)(i). See Mots. [Doc. Nos. 23, 36].

period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." In re Olsten Corp. Sec. Litig., 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998); see also Leavitt v. Alnylam Pharms., Inc., 378 F. Supp. 3d 60, 64 (D. Mass. 2019). Among these four factors, courts have considered the approximate losses suffered to be the most important in determining the largest financial interest. See Leavitt, 378 F. Supp. 3d at 64 (citing Ark. Teacher Ret. Sys. v. Insulet Corp., 177 F. Supp. 3d 618, 622 (D. Mass. 2016)).

1.  The First Three Factors

The first three factors all undisputedly favor Zhou. Zhou purchased 318,700 shares during the class period, as compared to Heer's 82,000. Zhou purchased 312,000 net shares during the class period, as compared to Heer's 65,000. And Zhou expended $2,628,900 net funds during the class period, as compared to Heer's $1,229,803. Zhou's Resp. in Further Supp. of Mot. 5 [Doc. No. 49].

2.  The Fourth Factor – Approximate Losses Suffered

a.  Loss Calculation Methodology

As mentioned above, courts using the Olsten-Lax factors "often consider approximate loss to be the most important factor." Ark. Teacher Ret. Sys., 177 F. Supp. 3d at 622. To calculate the approximate losses sustained by a proposed lead plaintiff in a securities class action, courts typically employ one of two methodologies: First–In–First–Out ("FIFO") or Last–In–First–Out ("LIFO"). Under FIFO, stocks acquired first are assumed to have been sold first in the calculation of losses; under LIFO, stocks acquired most recently are assumed to have been the first sold. "The overwhelming trend . . . nationwide has been to use LIFO to calculate such losses." Bo Young Cha v. Kinross Gold Corp., 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012); see also In re Organogenesis Securities Litigation, 241 F.R.D. 397, 402 (D. Mass. 2007) ("Recognizing the inappropriateness of using FIFO in this context, a number of courts compute

gains and losses using the … LIFO [method] when choosing a Lead Plaintiff"). "And, of the courts that have used FIFO, some have often done so reluctantly, solely because the parties had not supplied sufficient data on which to conduct a LIFO analysis." Bo Young Cha, 2012 WL 2025850, at *3.

One reason LIFO is the preferred methodology is because "FIFO has the potential to exaggerate losses, by failing to take into account gains that an investor might have made on the stock that were attributable to its artificial inflation as a result of the alleged fraud," while LIFO takes into account such gains. Id. LIFO allows the court to "exclude[] 'in-and-out' transactions, purchases and sales that occur during the class period, i.e., after the stock price was fraudulently inflated and before it dropped due to a corrective disclosure." Id., at *4. "Any gain or loss due to such transactions is reasonably read to reflect price fluctuations attributable to factors other than the fraud, and thus should be excluded from the PSLRA loss calculus." Id.; see also Leavitt, Inc., 378 F. Supp. 3d at 64 ("[s]o-called 'in-and-out transactions' (those securities both bought and sold within the class period) [should be] excluded from the calculation of approximate losses because any losses from those transactions lack a causal link to the allegedly false or misleading statements or omissions"); Vladimir v. Bioenvision, Inc., 2007 WL 4526532, at *5 (S.D.N.Y. Dec. 21, 2007) ("While FIFO may overstate actual losses suffered by stockholders, LIFO takes into account gains and can disregard losses that are not causally related to the misstatement claims") (emphasis added).

Accordingly, the court finds that LIFO is the proper methodology for calculating losses in the relevant period.

b.     Transactions During the Class Period

Although both Zhou and Heer use LIFO in their calculations, they disagree as to how to treat certain transactions completed during the class period. Zhou contends that Heer's "stated losses are inherently overstated because they include significantly large in-and-out transactions," and that if these are disregarded, Zhou's losses of $628,605 are greater than Heer's losses of $575,546. Zhou's Resp. in Further Supp. of Mot. 9 [Doc. No. 49]. Heer contends that the court should include all of these transactions in the losses calculation. Reply Mem. of Law in Further Supp. of Mot. 2 [Doc. No. 57]. He calculates losses of $815,887, as compared to Zhou's losses of $616,757. Heer asserts "that there was leakage of the truth through partial disclosures during the Class Period including on May 17, 2021," such that he may recover for subsequent losses. Reply Mem. of Law in Further Supp. of Mot. 2 [Doc. No. 57].

"[A] corrective disclosure need not be a 'mirror-image' disclosure—a direct admission that a previous statement is untrue." Massachusetts Ret. Sys. v. CVS Caremark Corp., 716 F.3d 229, 240 (1st Cir. 2013). But, "[t]o be sure, the corrective disclosure must relate to the same subject matter as the alleged misrepresentation." Id. The May 17, 2021 disclosure Heer cites stated that there was a material weakness in Desktop Metal's internal control over financial reporting and its disclosure controls and procedures were not effective. Guzman-Martinez Compl. ¶¶ 24-25 [1], Civil Action: 22-cv-10173. The August 11, 2021 disclosure provides similar language as the May disclosure. Id. at ¶¶ 27-28. Notably, neither disclosure makes mention of manufacturing and product compliance practice and procedures with respect to EnvisionTEC. In fact, the Guzman-Martinez complaint, which Heer characterizes as alleging "leakage of the truth" through the May 17, 2021 disclosure, alleges the opposite. The Guzman-Martinez complaint alleges that the May 17, 2021 disclosure was "materially false and/or misleading" because it "failed to disclose to investors:

9

(1) that there were deficiencies in EnvisionTEC's manufacturing and product compliance practices and procedures; (2) that the foregoing deficiencies presented a material risk to the commercialization of EnvisionTEC's products; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

Id. at ¶ 27. Indeed, the Guzman-Martinez complaint denotes November 8, 2021, as when the truth emerged regarding issues with EnvisionTEC in the Desktop Metal's Form 8-K. Id. at ¶ 30.

Accordingly, the court rejects Heer's argument that the May 17, 2021 disclosure was corrective such that his subsequent losses are not "in-and-out transactions."[7]

### 3. Calculation of Financial Interest

Having identified the Class Period and appropriate methodology for determining the lead plaintiff, the court turns to applying the Olsten-Lax factors. Heer does not dispute that Zhou's Olsten-Factor analysis, a summary of which is provided in her Response in Further Support of Her Motion [Doc. No. 49], is incorrectly calculated. During the class period of February 17, 2021, to November 15, 2021, excluding the gains and losses resulting from in-and-out transactions (which is consistent with LIFO), Zhou has the larger loss, purchased the greatest number of shares, purchased the greatest number of net shares, and expended the greatest amount in net funds. Id.

---

[7] The court finds Heer's second argument—Zhou should not be permitted to adjust the calculation methodology to exclude losses from "in-and-out transactions"—unpersuasive where Zhou has not delayed the process of selecting a lead plaintiff and has put forth a more accurate methodology for calculating recoverable losses for purposes of the Olsten-Lax analysis. See In re Comverse Tech., Inc. Sec. Litig., WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007) ("Before calculating a plaintiff's financial interest, the court must first determine what portion, if any, of a plaintiff's losses constitute potential recoverable losses for purposes of the necessary PSLRA/Olsten-Lax analysis").

Accordingly, the court finds that Zhou is the movant with the largest financial interest in the relief sought by the class.

        4.        Relevant Preliminary Requirements of Rule 23

The PSLRA's final requirement is that the proposed lead plaintiff satisfy Rule 23's class certification requirements of typicality, and adequacy. "To establish that a purported class member otherwise satisfies the requirements of Fed. R. Civ. P. 23 for purposes of a lead plaintiff motion, the movant need only make a prima facie showing that he or she satisfies the typicality and adequacy requirements." Leavitt, 378 F. Supp. 3d at 65; see also, Ellenburg v. JA Solar Holdings Co. Ltd., 262 F.R.D. 262, Fed. Sec. L. Rep. (CCH) P 95211 (S.D. N.Y. 2009) ("At the lead plaintiff stage of the litigation, in contrast to the class certification stage, a lead plaintiff movant need only make a 'preliminary showing that it satisfies the typicality and adequacy requirements of [Rule 23]'").

The court finds that Zhou satisfies both requirements. "A plaintiff's claim is typical if it arises from 'the same events or course of conduct' and involves the same legal theory as the claims of the rest of the class members." Leavitt, 378 F. Supp. 3d at 65 (quoting In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 46 (D. Mass. 2001)). Zhou is a typical class member because her claims arise from her purchase of Desktop Metal securities in reliance upon allegedly false and/or misleading statements made knowingly by Desktop Metal, which resulted in financial losses to her when the truth was publicly disclosed.

Zhou is also adequate to represent the class. "A plaintiff is adequate if 1) he or she has common interests and an absence of conflict with the other class members and 2) his or her attorneys are qualified, experienced and able vigorously to conduct the litigation." Leavitt, 378 F. Supp. 3d at 65 (quoting In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d at 46). As Zhou has sustained significant financial losses, the court finds that she has incentive to maximize the

recovery from the alleged fraud and her claims do not conflict with those asserted on behalf of the class.

Accordingly, the court finds that Zhou is presumptively the most adequate plaintiff and will be appointed as lead plaintiff.[8]

5.  Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this court's approval. See 15 U.S.C. § 78u-4(a)(3)(B)(v). "While the [c]ourt should not be a rubberstamp, it should give the lead plaintiff['s] choice some weight." In re Lernout, 138 F. Supp. 2d at 46-47. Here, Zhou asks the court to appoint Hagens Berman as lead counsel and has submitted a document containing the resumes of Hagens Berman's law firm. See Hagens Berman Firm Résumé, Ex. D [Doc. No. 38-4]. However, Zhou's request that the court appoint a law firm, rather than individual attorneys, raises the question of whether a law firm may serve as counsel where it may not enter appearances, or file pleadings pursuant to Fed. R. Civ. P. 11 and where the Local Rule 83.5.2 requires that when a party is represented by a law firm, "the appearance must include the name . . . of at least one attorney individual attorney." Accordingly, Zhou's motion is denied without prejudice as to the appointment of lead counsel. Zhou may renew her motion by identifying the individual attorneys Zhou seeks to have appointed. In the alternative, Zhou may renew her motion for the appointment of the Hagens Berman, but must provide authority for the proposition that the PSLRA, Federal Rules of Civil Procedure, and/or applicable ethical rules contemplate and provide for the appointment of law firms, as opposed to

---

[8] No other class member has demonstrated that Zhou "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class" to rebut the presumption.

individual attorneys, as lead counsel. The court does not anticipate finding persuasive court orders that appoint law firms as counsel without specifically addressing the issue.

## II. Conclusion

For the forgoing reasons,

1. Electronic Order [8], Civil Action 22-cv-10297, consolidating the fourth action with the first three actions is VACATED;

2. Xie's Motion [Doc. No. 28] seeking consolidation, appointment as Lead Plaintiff in the consolidated action on behalf of a class consisting of persons or entities that acquired Desktop Metal securities commencing January 15, 2021, is DENIED as moot;

3. Xie's Motion [5], in Civil Action 22-cv-10297, seeking the same relief is DENIED as to consolidation, and denied without prejudice as premature as to appointment of Lead Plaintiff and Lead Counsel on behalf of a class consisting of persons or entities that acquired Desktop Metal Securities between January 15, 2021, and February 16, 2021 (inclusive of both dates);

4. And Zhou's Motion [Doc. No. 36], is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART. The court appoints Zhou as Lead Plaintiff in the consolidated action on behalf of a class consisting of persons or entities that acquired Desktop Metal securities between February 17, 2021, through November 15, 2021 (inclusive of both dates). The court denies without prejudice Zhou's request to appoint Hagens Berman Sobol Shapiro LLP as lead counsel.

IT IS SO ORDERED.

Dated: July 7, 2022   /s/ Indira Talwani
                      United States District Judge